781 F.2d 1161
 Godfrey JASMIN, Plaintiff-Appellee,
v.
Walton J. DUMAS, et al., Defendants,
Continental Casualty Company, Defendant-Appellant.
Godfrey JASMIN, Plaintiff-Appellee,
v.
Walton J. DUMAS, et al., Defendants,
CONTINENTAL CASUALTY CO., Defendant-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee,
v.
Godfrey JASMIN, Defendant-Appellant,
v.
Henry M. JASMIN, Defendant-Appellee.
 Nos. 84-3185, 84-3368.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 6, 1986.
 
 Deutsch, Kerrigan & Stiles, Raymon G. Jones, Ralph L. Kaskell, Jr., New Orleans, La., for defendant-appellant in No. 84-3185.
 Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Winn, Shirley A. Nassif, New Orleans, La., for plaintiff-appellee in No. 84-3185.
 Ralph L. Kaskell, Jr., Raymon G. Jones, New Orleans, La., for Continental in No. 84-3368.
 Shirley A. Nassif, Robert E. Winn, New Orleans, La., for G. Jasmin in No. 84-3368.
 C. Gordon Johnson, Jr., New Orleans, La., for W. Dumas and State Farm.
 Lawrence J. Ernst, New Orleans, La., for Henry Jasmin.
 John C. Combe, Jr., New Orleans, La., for Lumbermans Mut. Cas. Co.
 H.F. Foster, III, New Orleans, La., for Amicus on Rehearing-Louisiana Association of Defense Counsel.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before TATE and HIGGINBOTHAM, Circuit Judges, and CASSIBRY,* District Judge.
 ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
 (Opinion August 16, 1985, 5 Cir., 1985, 769 F.2d 1047)
 PER CURIAM:
 
 
 1
 We grant the appellant's petition for panel rehearing and vacate in part our panel opinion.
 
 
 2
 After we issued our panel opinion in this case, Jasmin v. Dumas, 769 F.2d 1047 (5th Cir.1985), the defendant Continental Casualty Company ("Continental") filed a petition for panel or en banc rehearing to reconsider this court's decision to hold Continental liable to Godfrey Jasmin for an additional $1,000,000 as excess uninsured motorist ("U/M") insurer. On rehearing, Continental argues for the first time that our additional $1,000,000 award, which made Continental liable for a total of up to $2,000,000, ignores the aggregate and per occurrence liability limitations[1] ($1,000,000 each) stated in Item 3 of the commercial umbrella policy at issue in this case. In light of this new argument, we grant Continental's petition for panel rehearing and amend the judgment to delete the additional $1,000,000 award, together with the legal interest we awarded on that amount.
 
 I.
 
 3
 By statute, Louisiana requires that any "automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle" must provide U/M coverage "in not less than the limits of bodily injury provided by the policy," unless the insured rejects such coverage in writing. La.R.S. 22:1406(D)(1)(a) (1977). During the course of the litigation in the district court, the Supreme Court of Louisiana held that a commercial umbrella liability policy, such as the one Continental issued to Pulitzer covering the accident in this case, was within the terms of La.R.S. 22:1406(D)(1)(a) and automatically provided U/M coverage up to the amount of the umbrella policy limits. Southern American Insurance Co. v. Dobson, 441 So.2d 1185, 1190-91 (La.1983).
 
 
 4
 In our original panel opinion we held that the statute, as applied in Dobson, required Continental to be liable for $1,000,000 of primary U/M coverage on the accident vehicle and an additional $1,000,000 of excess U/M coverage on the other vehicle owned by Pulitzer and covered by the umbrella policy. In holding that Continental had to provide the additional $1,000,000 of U/M coverage on the non-accident vehicle, we relied on early Louisiana jurisprudence (again urged upon us by the plaintiff as controlling in this case) that seemed to require U/M coverage in a statutory minimum amount for each vehicle covered by an insurance policy. It also permitted the stacking of the U/M coverages on multiple vehicles insured in a single insurance policy. Barbin v. United States Fidelity & Guaranty Co., 315 So.2d 754, 758 (La.1975); see also Posey v. Commercial Union Insurance Co., 332 So.2d 909, 913-14 (La.App.2d Cir.1976); Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App.3d Cir.), cert. denied, 302 So.2d 306 (La.1974), 302 So.2d 308 (La.1974) ("No error of law").
 
 
 5
 Those earlier cases are distinguishable from the instant case, however, on two grounds. First, they were decided at a time when La.R.S. 22:1406(D)(1)(a) specified that U/M coverage had to be provided in the amounts described in the Motor Vehicle Safety Responsibility Law--at least $5,000 per person and $10,000 per accident. Since 1974, however, La.R.S. 22:1406(D)(1)(a) has no longer required a specific, minimum amount of U/M coverage for each vehicle. Instead, it now requires U/M coverage in an amount "not less than the limits of bodily injury liability provided by the policy," La.R.S. 22:1406(D)(1)(a) (1977), allowing insurance companies and their insureds greater flexibility in choosing the amount and type of U/M coverage desired.[2] Given this statutory change, we do not believe that the earlier case law controls.
 
 
 6
 The second ground for distinguishing the earlier Louisiana cases is that they involved primary automobile insurance (for which separate premiums were paid on each vehicle), not umbrella policies. In relying on those cases, we failed to consider the different kind of U/M coverage provided by an umbrella policy, in light of both the statute and the Dobson opinion. The very nature of an umbrella policy is that it supplements underlying coverage of a number of different risks. The Continental umbrella policy covered not only liability relating to two vehicles, but also Pulitzer's liability relating to his business property. Unlike primary individual coverage for each vehicle and no separate premiums were paid. Cf. Barbin v. United States Fidelity and Guaranty Co., 315 So.2d 754, 757-58 (La.1975). Instead, the one umbrella policy provided, for any one occurrence (accident)[3], up to $1,000,000 of liability coverage on both vehicles together. Once liability for any one insured occurrence reached the $1,000,000 policy limits, Continental would not be liable for any more liability coverage for that occurrence. Thus, although the stacking of insurance coverages is not generally relevant in the liability insurance context, if it were, there would be no separate coverage (on the vehicle not involved in the accident) with which to stack. This single coverage of multiple risks is the distinguishing feature of an umbrella policy and one of the reasons that such a large dollar amount of coverage is available at affordable rates.
 
 
 7
 An understanding of the nature of a vehicle's liability coverage under an umbrella policy helps to make clear the nature of a vehicle's U/M coverage under the same policy, given the statutory requirements. The statute does not compel umbrella liability coverage or umbrella U/M coverage; it merely makes the two mirror images of each other. The Continental umbrella policy provided liability coverage up to a per occurrence limit on the two vehicles together, not on each one separately. Thus, the U/M coverage automatically provided under state law similarly covered the two vehicles together, rather than each one individually. The U/M coverage was still the same as the liability coverage however, and this is all that La.R.S. 22:1406(D)(1)(a), as amended, requires.
 
 
 8
 In the instant case, the umbrella liability coverage limit of $1,000,000 for each occurrence means that only $1,000,000--not $2,000,000--of U/M coverage was provided by the Continental policy, insofar as any one occurrence was concerned.[4] As the mirror image of the liability coverage however, the U/M coverage so provided covered both vehicles, not each one separately. Thus, once the $1,000,000 of U/M coverage was exhausted on the accident vehicle to cover Dumas' liability, no more umbrella U/M coverage remained, in the context of this accident, to cover the other vehicle described in the umbrella policy. The additional $1,000,000 of separate U/M coverage on the other vehicle, awarded by our panel opinion, did not exist and could not be stacked as excess coverage. Our original award of this additional $1,000,000 must, therefore, be vacated.
 
 
 9
 We note that in the only other reported post-Dobson case involving an umbrella policy, a Louisiana court of appeal recognized the effectiveness of the policy's limit of liability. In Capone v. King, 467 So.2d 574, 579 (La.App. 5th Cir.1985), the court rejected an argument by the umbrella insurer that its policy did not provide any U/M coverage, holding that "by operation of statute their policy provides U.M. coverage to Capone to the 5 million dollar limits of liability." We follow the Capone court's view that liability limits in an umbrella policy should be respected.
 
 
 10
 Continental urges this court to decide whether the $1,000,000 available to Godfrey Jasmin from Continental's umbrella policy comes under Coverage A or Coverage B of the policy. We need not and therefore decline to address this state law issue, one not decided by the Dobson court. It is more appropriate for a Louisiana state court to make such a technical interpretation of state insurance law.
 
 II.
 
 11
 In the unpublished portion of our panel opinion, we held, inter alia, that Continental and Dumas were solidarily liable for the sum of $1,942,500, plus legal interest from the date of judicial demand, June 11, 1981, until paid. The $1,942,500 figure represented the remaining principal balance after payments of $550,000 were made by the other insurers.
 
 
 12
 Notwithstanding our decision today to delete the additional $1,000,000 for which we had held Continental liable, Continental is still responsible for the original $1,000,000, plus legal interest from the date of judicial demand, until paid. In addition, Continental is liable for legal interest from the date of judgment, February 21, 1984, on $942,500, the remaining principal balance after accounting for payments by the other insurers (Lumbermen's and State Farm) and by Continental. Interest on this amount shall run until Continental has paid that portion of the judgment for which it is liable.
 
 Conclusion
 
 13
 For the foregoing reasons, Continental's petition for panel rehearing is GRANTED. The part of our original panel opinion holding Continental liable for an additional $1,000,000 as excess U/M insurer is VACATED. The judgment of the district court is AMENDED with respect to the liability of the defendant-appellant CONTINENTAL to hold that it is solidarily liable with Dumas for the sum of One Million Dollars ($1,000,000), together with legal interest on that amount from the date of judicial demand, June 11, 1981, until paid. In addition, CONTINENTAL is liable for legal interest from the date of judgment, February 21, 1984, on Nine Hundred Forty-Two Thousand Five Hundred Dollars ($942,500), the remaining principal balance after accounting for payments by the other insurers (Lumbermen's and State Farm) and by Continental. Interest on this amount shall run until Continental has paid that portion of the judgment for which it is liable. The judgment, as AMENDED, is AFFIRMED in all other respects. Continental to pay all costs.
 
 
 14
 REHEARING GRANTED; ORIGINAL PANEL OPINION VACATED IN PART; AFFIRMED, AS AMENDED.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 Clause 7, page 3, of the "Coverage" provisions of the Continental umbrella policy provides:
 
 
 [7]
 LIMITS OF LIABILITY
 Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury, property damage or advertising injury, (3) claims made or suits brought on account of personal injury, property damage or advertising injury, (4) automobiles, aircraft or watercraft to which this policy applies or (5) coverages under which loss is insured in this policy, the company's liability is limited as follows:
 Each Occurrence--The limit of liability stated in item 3 of the declarations as applicable to "each occurrence" is the limit of the company's liability for all loss to which this policy applies as the result of any one occurrence.
 With respect to Coverage A, if the limits of liability in the immediate underlying policy apply on a basis other than each occurrence (including but not limited to each accident, claim, incident, loss, or each common cause), then the "each occurrence" limit of liability applicable to Coverage A shall also apply on the same basis.
 Aggregate--Subject to the above provision respecting "each occurrence" the total liability of the company for all loss to which this policy applies and described in any of the numbered subparagraphs below shall not exceed the "aggregate" limit of liability stated in item 3 of the declarations:
 (1) all personal injury and property damage included within the products hazard and all personal injury and property damage included within the completed operations hazard;
 (2) all occupational disease sustained by all employees of insureds arising out of and in the course of their employment;
 (3) all loss caused by one or more occurrences arising out of any hazard to which an aggregate limit of liability applies in the underlying insurance.
 If this policy is issued for more than one year, this "aggregate" limit of liability applies separately to each consecutive annual period of this policy or, if the last consecutive period is less than twelve months, to such period of less than twelve months.
 With respect to Coverage A, if the applicable limit of liability of the underlying insurance is less than as stated in the schedule of underlying insurance because the aggregate limit of liability of the underlying insurance has been reduced or exhausted, this policy becomes excess of such reduced limit of liability provided such reduction or exhaustion is solely the result of injury or destruction occurring during this policy period, and not before.
 
 
 [2]
 In 1977 (Act 623), La.R.S. 22:1406(D)(1)(b) was amended to allow an insured to increase his U/M coverage "to any amount," removing an earlier limitation
 
 
 [3]
 The following definitions appear in the Continental umbrella policy provisions at page 5:
 "occurrence" means
 (1) with respect to subsection (1) of the definition of personal injury and with respect to property damage, an accident, including continuous or repeated exposure to conditions, which results, during this policy period, in such personal injury or property damage neither expected nor intended from the standpoint of the insured. All loss arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence,
 (2) with respect to subsections (2), (3) and (4) of the definition of personal injury, an act or series of acts of the same or similar nature, committed during this policy period which causes such personal injury. All loss arising out of such act or series of acts, regardless of the frequency thereof or the number of claimants, shall be deemed to arise out of one occurrence, and
 (3) with respect to advertising injury, an act or series of acts in which the same or similar advertising material is used, regardless of the number or kind of media used, committed during this policy period which causes such advertising injury. All damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, or the number of claimants shall be deemed to arise out of one occurrence;
 * * *
 "personal injury" means
 (1) bodily injury, shock, mental injury or mental anguish,
 (2) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the insured,
 (3) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except that maliciously published or uttered by, at the direction of, or with the consent of the insured and except that contained in any advertisement, publicity article, broadcast or telecast and arising out of any insured's advertising activities,
 (4) discrimination because of race, color, sex, religion, national origin, age or handicap;
 "products hazard" includes personal injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;
 "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;
 
 
 [4]
 We do not address the question of what impact, if any, the aggregate liability limits would have on the U/M coverage under the policy