Arnold MARTIN, as an individual and as Special
Administrator of the Estates of Julia Martin
and Collin Martin, deceased, and Derrick
Martin, a minor, by his guardian ad litem,
Diane Loftus, Petitioners-Appellants,

v.

MILWAUKEE MUTUAL INSURANCE
COMPANY, a Wisconsin Corporation,
Respondent.

Supreme Court

*No. 87–0590. Argued September 7, 1988.—Decided December
14, 1988.*

(Also reported in — N.W.2d —.)

For the petitioners-appellants there were briefs (in court of appeals) by *Michael F. Hupy* and *Hausmann, McNally & Hupy, S.C.,* Milwaukee, and oral argument by *Michael F. Hupy.*

For the respondent there was a brief (in court of appeals) by *Thomas N. Harrington, Mark D. Richards* and *Cook & Franke, S.C.,* Milwaukee, and oral argument by *Mr. Harrington.*

Amicus curiae brief was filed by *James T. Murray, Jr., Randy S. Parlee,* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, for the Wisconsin Insurance Alliance.

DAY, J. This is an appeal from two orders of the circuit court of Racine county, Hon. Stephen Simanek, Judge. This case was accepted on certification from the court of appeals pursuant to sec. 809.61, Stats. (1985–86).

The question as certified is: "Whether a passenger who is not a named insured may 'stack'[1] the uninsured motorist policies of the driver."

---

[1] "The term 'stacking' as used in the insurance industry has been defined as follows:

'Stacking is just another word to denote the availability of more than one policy in the reimbursement of the losses of the insured. The second insurer's liability does not arise until the policy limits of the first are exhausted; nor does the third's arise until the combined limits of the first and second carriers are exhausted. There is no prorating between insurers.' P. Pretzel, *Uninsured Motorists,* sec. 25.5(B) p. 88 (1972).

Under the uninsured motorist provisions of the policies in force in this case another way of phrasing the question is: May a "person occupying an insured automobile" (occupancy insured) but who is not a "named insured [or] ... relative" recover under both the policy covering the car in which he is a passenger and also under the provisions of an identical policy covering a second car owned by the same "named insured"? We conclude under the terms of this policy such occupancy insured is not protected by the uninsured motorist coverage of the unoccupied non-involved vehicle.

A second question arising out of the particular facts of this case is: When the combined uninsured motorist damages of the named insured and the occupancy insured are greater than the coverage of the policy on the involved vehicle, must the insurer first exhaust the coverage provided in a policy on an uninvolved vehicle covering the same named insured for the named insured's damages before paying any damages out of the coverage provided for the vehicle involved in the accident? We conclude the answer to this second question is "yes."

We therefore reverse the rulings of the circuit court and remand the cause for further proceedings.

The facts which give rise to this litigation are as follows:

On or about March 27, 1981, Milwaukee Mutual Insurance Company (Milwaukee Mutual) issued an automobile insurance policy to Colvin and Emma Nunn. Colvin and Emma Nunn were named insureds

The term stacking is also used when the same insurer issues multiple policies and the insured seeks to aggregate the coverage from each of the policies." *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 159, n. 1, 361 N.W.2d 673 (1985).

under the terms of the policy. Two automobiles owned by the Nunns were covered by the policy: a 1975 American Motors Corporation Matador and a 1981 American Motors Corporation Concord. The policy contained an uninsured motorist provision with limits of $100,000 per person and $100,000 per accident for each auto. Although both autos are included in the same issued policy, each auto is considered to have separate and independent coverage. *See Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 578, 360 N.W.2d 61 (Ct. App. 1984).

Coverage under the uninsured motorist provision provided that Milwaukee Mutual would pay the insured or his legal representative all sums which they were "legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom ... sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; ...." "Insured" is defined in the uninsured motorist provision of the policy as "(a) the named insured and any relative; (b) any other person while occupying an insured automobile; ...." "Insured automobile" is defined under the same provision as "(a) an owned automobile for which a premium charge indicates that uninsured motorists coverage is afforded provided the use thereof is by or with the permission of the named insured ...." "Owned Automobile" is defined as "(a) a private passenger, farm or utility automobile owned by the named insured and described in the declarations ...."

On May 2, 1981, a two car accident occurred between the insured 1981 Concord (the involved auto) driven by Emma Nunn and a vehicle operated by

Beverly Carlson. Beverly Carlson was uninsured at the time of the accident. Julia Martin, Collin Martin, and Derrick Martin were passengers in the Nunn automobile at the time of the accident. As a result of the accident, Emma Nunn, Julia Martin, and Collin Martin were killed. Derrick Martin was injured. The Martins were not relatives of the Nunns.

After the accident, Colvin Nunn made an uninsured motorist claim under this policy for damages resulting from the death of his wife, Emma Nunn. In February, 1982, Milwaukee Mutual paid Mr. Nunn $93,000 as settlement of his uninsured motorist claim.

Thereafter, Arnold Martin, as an individual and as Special Administrator of the Estate of Julia Martin and Collin Martin, deceased, and Derrick Martin, a minor by his guardian ad litem, (Martins) commenced a liability action alleging Emma Nunn was negligent in causing the accident. The suit was tried and Emma Nunn was found to be free of negligence. Therefore, the Martins were unable to recover damages from the Nunn's automobile liability insurance.

The Martins then sought to recover under the uninsured motorist coverage of the Nunns' policies based on the negligence of the other driver, Ms. Carlson, who was uninsured.

The Martins and Milwaukee Mutual sought declaratory judgment as to their respective rights and obligations under the policies.

The Martins requested the circuit court declare: The Martins were insured under the Nunn's uninsured motorist provision, each covered in the amount of $100,000; in the alternative, they were covered for a minimum of $25,000 each based on sec. 632.32(4),

Stats.;[2] the Martins had the right to proceed to arbitration with respect to the recovery under the uninsured motorist insurance; and that Milwaukee Mutual pay a punitive damage amount of $50,000 for its assertion, in bad faith, that the Martins were only entitled to $7,000 under the uninsured motorist portion of its insurance contract.

Milwaukee Mutual responded by also asking for a declaratory judgment stating that Milwaukee Mutual had a maximum exposure of $100,000 for the accident and that only $7,000 ($100,000 exposure minus the $93,000 paid to Mr. Nunn on his claim) was available for the Martins to recover less $1,258.15 for court costs in the liability action.

In a summary judgment order, the circuit court ruled the total uninsured motorist liability of Milwaukee Mutual for the May 2, 1981, accident was $100,000. It also found that Milwaukee Mutual had paid $93,000 of this $100,000 to Colvin Nunn for his claim under the policy. Therefore, the circuit court concluded, only $7,000 of uninsured motorist coverage remained from which the Martins might recover.

The Martins then moved the circuit court to vacate any finding as to which of the two uninsured motorist coverages (one from the Concord, one from the Matador) served as the fund from which the $93,000 payment to Colvin Nunn was made and to reconsider the summary judgment order. They also moved to allow them to amend their complaint. Their amended complaint requested that $100,000 be made available to them for damages and once again asked

---

[2]The minimum amount requirement as required by sec. 632.32(4)(a), Stats., (1979) was $15,000, not $25,000.

for damages against Milwaukee Mutual because of bad faith. The circuit court denied these motions.

This case raises questions of first impression in this state. We conclude the terms of this insurance policy control because of the lack of any legislation that would require a different result.

■■

In reviewing a circuit court's grant of summary judgment, this court will reverse the order only if the circuit court incorrectly decided a legal issue or if material facts are in dispute. *Forsythe v. Family Court Com'r.,* 131 Wis. 2d 322, 326, 388 N.W.2d 580 (1986). In this case there are no material facts in question. The construction of a statute and insurance contract provisions are questions of law. *Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 170, 395 N.W.2d 776 (1986). This court need not give special deference to the determination of the circuit court when reviewing questions of law. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985).

The first question is whether an occupancy insured of the involved vehicle who is not a named insured can benefit from uninsured motorist insurance carried by the named insured on another vehicle not involved in the accident.

The "named insured" in both policies was Colvin Nunn, Emma Nunn, and relatives. The Martins (Plaintiffs/Passengers) were not named insureds or relatives in the policies on either the Concord or the Matador. The Martins were "occupying" the Concord and so covered by its policy. They clearly were *not* occupying the Matador which was not involved in the accident and cannot benefit from the uninsured motorist coverage on that vehicle.

The Martins argue that a passenger should be able to stack the driver's uninsured motorist policies for two reasons. First, they argue the circuit court's decision creates a hierarchy of insureds which is prohibited by the Wisconsin statutes. Sections 632.32(3)(a), and 632.32(6)(b)2a, Stats. Second, they argue Wisconsin has an established public policy to maximize insurance coverage. Alternatively, the Martins argue it is against public policy to allow Milwaukee Mutual to almost exhaust its policy limits to one person when there are several claimants covered by the policy.[3]

The Martins also cite six cases in support of their contention that allowing the occupants to stack the named insured's coverages is a position held by a large number of jurisdictions. *Jasmin v. Dumas*, 769 F.2d 1047 (5th Cir. 1985); *Werley v. United Service Auto Ass'n.*, 498 P.2d 112 (Alaska 1972); *Allstate Ins. Co. v. Ferrante*, 518 A.2d 373 (Conn. 1986); *State Farm Mut. Auto Ins. Co. v. Jones*, 133 Ga. App. 920, 213 S.E.2d 73 (1975); *Walton v. State Farm Mut. Auto. Ins. Co.*, 518

___

[3]In its certification to this court, the court of appeals stated in footnote 5 "[m]uch of this last argument [leaving $7,000 out of the $100,000 coverage on the involved vehicle available for the Martins claims] is presented as support for a finding of bad faith. Milwaukee Mutual maintains that the bad faith issue was not presented to or decided by the trial court."

We note the Martins' statement that in Wisconsin it "is unclear as to whether an insurance company may exhaust its policy limit to one person, thus leaving the other claimants out in the cold." Brief for Appellant at page 16. Such admission and the fact that the question of whether an occupant can stack the uninsured motorist coverages of the named insured is undecided in Wisconsin leads this court to conclude the record before us is insufficient to rule on the issue of bad faith and accordingly we do not reach this issue.

P.2d 1399 (Haw. 1974); *Sloviaczek v. Estate of Puckett,* 565 P.2d 564 (Idaho 1977).

Most of these cases are distinguishable. *Jasmin v. Dumas,* 769 F.2d 1047 (5th Cir. 1985), was modified in *Jasmin v. Dumas,* 781 F.2d 1161 (5th Cir. 1986). The court vacated the original finding that an extra coverage could be stacked and, therefore, is no longer persuasive. *Jasmin,* 781 F.2d at 1166.

In *Sloviaczek,* the claimants attempted to stack two policies which specifically covered the claimants as "insureds" under each policy. In *Walton,* the plaintiff attempted to stack the driver's uninsured motorist coverage with uninsured motorist coverage provided by his own automobile insurance policy. The plaintiff was considered an "insured" under both policies. In *Werley,* the plaintiff was also defined as an "insured" under all of the policies he attempted to stack. *Werley,* 498 P.2d at 119. And in *State Farm Mut. Auto. Ins. Co. v. Jones,* the plaintiff attempted to stack the uninsured motorist coverages of the driver's two vehicles. The plaintiff, however, was classified as an "insured" because the terms of both policies extended coverage to him owing to the fact that the driver was operating a non-owned vehicle. Under all of the preceding cases, the plaintiff was allowed to stack uninsured motorist coverages because they qualified as "insureds" under the terms of the policies stacked. These cases are not inconsistent with the position this court adopts today.

Only one case, *Allstate Ins. Co. v. Ferrante,* 518 A.2d 373 (Conn. 1986), clearly supports the Martins' position. The court in *Ferrante* based their decision on three points. First, they found the Connecticut insurance statutes were "'person oriented' rather than

'vehicle oriented' and have thus emphasized that insurance coverage 'attaches to the insured person, not the insured vehicle.'" *Id.* 518 A.2d at 377. We agree that uninsured motorist coverage attaches to the insured person. *See Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 181, 361 N.W.2d 680 (1985). We conclude, however, the Martins are not covered under the policy of the uninvolved auto.

The second argument made in *Ferrante* suggests that a named insured might want to extend coverage under his own insurance to his passengers. *Ferrante,* 518 A.2d at 377–78; *See also Estate of Calibuso v. Pacific Ins. Co., Ltd.,* 62 Haw. 424, 616 P.2d 1357 (1980). We agree in some cases this may be true. On the other hand, it is as reasonable to assume the named insured would want the extra protection provided by the uninvolved auto's policy to be available exclusively for their own and their relatives' claims. This court has recognized that the purchase of uninsured motorist coverage protects the policyholder and their relatives (as defined in the policy). *See Welch,* 122 Wis. 2d at 181. Other jurisdictions have also noted this purpose as a reason to purchase uninsured motorist insurance.

> "Stacking is allowed the policyholder, or members of his household, on the presumption that when he purchases uninsured motorist insurance coverage for more than one automobile, his intent is to buy extra protection for himself and his family, regardless of whether the injuries occur in any of the insured vehicles or elsewhere. The same cannot be said for the occupant not related to the policyholder. His recovery is limited to the insurance attributable to the vehicle in which he was riding at the time of the accident." *Estate of Calibuso,* 616 P.2d

at 1366–1367 (Menor, J., dissenting) (citations omitted).

*See also Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656, 661 (Mo. App. 1980).

An occupant may also be able to recover from the named insured's automobile liability insurance coverage if the occupant can show their damages were caused by the driver's negligence.

Finally, the *Ferrante* court argues that not allowing an occupancy insured to stack will create two classes of unequally treated insureds. This is the same argument the Martins make by asserting the circuit court's order creates a hierarchy of insureds. We disagree with the Martins contention that this differing treatment is prohibited by secs. 632.32(3)(a) and 632.32(6)(b)2a, Stats.[4]

Section 632.32(3)(a), Stats., has been primarily interpreted as dealing with *liability* insurance rather than indemnity insurance such as uninsured motorist coverage. *See Rauch v. American Fam. Ins. Co.,* 115 Wis. 2d 257, 263, 340 N.W.2d 478 (1983). Even if sec. 632.32(3)(a), Stats., did apply to indemnity insurance, it and sec. 632.32(6)(b)2 would not apply in this case.

---

[4] "632.32 Provisions of motor vehicle insurance policies. . . . (3) Required provisions. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:

"(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy . . ."

"(6) Prohibited provisions. . . (b) No policy may exclude from the coverage afforded or benefits provided: . . .

2.a. Any person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including death resulting therefrom to that person."

The policy of an involved auto is applied to both the driver and occupant. Both are able to recover under that uninsured motorist provision. The uninvolved auto's policy, however, is not subject to the statute because the Martins are not covered by it; not being occupants they were not occupancy insureds. The statutes do not state that "occupancy insureds are entitled to all applicable insurance protection the named insured has procured for himself."

The Martins' second argument is that the statutes require a minimum amount of uninsured motorist coverage for each person in the auto. They cite *Dorn v. Liberty Mut. Fire Ins. Co.*, 401 N.W.2d 662 (Minn. 1987), as authority for this position. The Minnesota legislative intent and the Minnesota statute relied upon in *Dorn* are different from that in our statute, sec. 632.32(4)(a), Stats.

The statute in *Dorn*, Minn. Stats. sec. 65B.49, subd. 4(1) (1978), stated:

> "No plan of reparation security may be renewed, delivered or issued ... unless coverage is provided therein or supplemental thereto, in amounts of $25,000 because of injury to or death of one person in any accident, and subject to said limit for one person, $50,000 because of bodily injury to or the death of two or more persons in any accident. *Dorn*, 401 N.W.2d at 663."

The court in *Dorn* believed the legislative intent behind the statute was meant to provide minimum coverage per person per accident. They pointed to recent changes in that statute that clarified the legislature's motivation. *Id.* The new form of the statute reads:

"The coverages combined, at a minimum, must provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident. *In the case of injury to, or the death of, two or more persons in any accident, the amount available to any one person must not exceed the coverage limit provided for injury to, or the death of, one person in any accident.* For purposes of this subdivision, uninsured motorist coverage and underinsured motorist coverage shall be a single coverage." Minn. Stats. sec. 65B.49, subd. 3a(a) (1986) (emphasis added). *Id.* 401 N.W.2d at 663–64.

Our statute is void of any such language or legislative intent. Section 632.32(4)(a), Stats., (1979) is silent on multiple claims:

**"632.32 Provisions of motor vehicle insurance policies. . . . (4)** Required uninsured motorist and medical payments coverages. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

"(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $15,000 per person and $30,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the

bodily injury liability limits provided in the policy."

The majority of courts that have decided the question of stacking by occupancy insureds under the facts similar to what we have here have reached a conclusion contrary to the position argued for by the Martins. We find those cases more persuasive.

> "[O]ccupants of an insured motor vehicle involved in an accident, who have uninsured motorist coverage solely because of their status as passengers, may not stack the uninsured motorist coverage under a separate policy of insurance purchased by the [named insured] of the involved vehicle for a noninvolved vehicle unless they qualify as insureds under [the noninvolved vehicle's] policy. *Doerner v. State Farm Mut. Auto Ins. Co.,* 337 N.W.2d 394, 396 (Minn. 1983);

> "[I]n order for Mrs. McCallum, as a passenger in the Lewis automobile, to be able to stack the coverages of both vehicles, she must demonstrate she is an 'insured' under each vehicle. We believe Mrs. McCallum is not an 'insured' under the second Lewis vehicle. The Lewises' policy defines an insured as a 'covered person' for purposes of uninsured motorist coverage. The only part of this definition Mrs. McCallum could arguably fall within defines a 'covered person' as '[a]ny other person occupying your covered [automobile].' (Emphasis deleted.) In order for Mrs. McCallum to be a covered person under this definition, she must have been 'occupying' a particular vehicle. Because Mrs. McCallum was not 'occupying' the Lewises' second automobile at the time of the accident, she is not an insured under that vehicle." *Lewis v. Pennsylvania Gen. Ins. Co.,* 391 N.W.2d 785, 790, n. 9 (Minn. 1986).

A majority of jurisdictions that have dealt with this question are in accord with the reasoning in *Doerner* and *Lewis. See Hines v. Government Employees Ins. Co.,* 656 S.W.2d 262, 265 (Mo. 1983) (en banc); *Beeny v. California State Auto Ass'n.,* 752 P.2d 756, 758 (Nev. 1988); *Babcock v. Adkins,* 695 P.2d 1340, 1342–43 (Okla. 1985); *Flamini v. Gen. Accident Fire & Life Assurance Corp.,* 328 Pa. Super. 406, 477 A.2d 508, 514 (1984); *See also Burke v. Aid Ins. Co.,* 487 F. Supp. 831 (D.C. Kan. 1980) (plaintiff attempts to stack commercial fleet policies); *Ohio Casualty Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky. 1979) (plaintiff attempts to stack commercial fleet policies).

In addition, all the Wisconsin cases that have permitted stacking pursuant to sec. 631.43(1), Stats.,[5] have required the parties stacking policies to be covered by all of those policies stacked.

In *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980), the plaintiff was injured when the vehicle in which she was a passenger collided with an uninsured motorist. The vehicle in which the plaintiff was riding as a passen-

[5]Section 631.43, Stats., (1979) states:

"631.43 Other insurance provisions. (1) General. When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions. The policies may be their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured."

ger had uninsured motorist coverage which she was eligible for as an occupant of that vehicle. The plaintiff also had her own personal uninsured motorist coverage through the insurance policy on her own automobile.[6] The court of appeals permitted the plaintiff to stack the coverages. *Id.* 100 Wis. 2d at 26.

In *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 360 N.W.2d 61 (Ct. App. 1984), the plaintiff had two automobiles insured by one policy and wanted to stack the uninsured motorist provisions for each auto insured by the policy. Because the plaintiff was the named insured under both policies, stacking was permitted.

In *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985), the plaintiff was permitted to stack three policies in which he was the named insured. *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985), also permitted the plaintiff to stack insurance coverages in which the plaintiff was the named insured in each policy. In all of the cases allowing a plaintiff to stack coverages, the plaintiff always qualified for coverage under the terms of the individual policies. Stacking permits those who are covered under separate policies to aggregate the totals of each policy for a larger total insurance benefit. But before one can stack, one must be covered

---

[6] "[O]nce uninsured motorist coverage is purchased, the insured, and his or her relatives insured for liability, have uninsured motorist protection under all circumstances. They are insured 'when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick.'" *Welch,* 122 Wis. 2d at 181. (Citation omitted.)

by the policies. *See Nicholson v. Home Ins. Co., Inc.,* 137 Wis. 2d 581, 604, n. 6, 405 N.W.2d 327 (1987).

Finally, the Martins contend that because the Nunns are able to stack as named insureds, so too should they be able to stack as occupancy insureds. They argue that Wisconsin has a long history of maximizing insurance coverage and cite *Miller v. Amundson,* 117 Wis. 2d 425, 429, 345 N.W.2d 606 (1984); *Groth v. Farmers Mut. Auto. Ins. Co.,* 21 Wis. 2d 655, 659, 124 N.W.2d 606 (1963). "Maximize" does not mean create coverage. To allow the Martins to stack the Nunns' coverages would create coverage where none exists under the terms of the policy.

The second question is: When the combined uninsured motorist damages of the named insured and the occupancy insureds are greater than the coverage of the policy on the involved vehicle, must the insurer first exhaust the coverage provided in a policy on an uninvolved vehicle covering the same named insured before paying any damages to the named insured out of coverage provided for the vehicle involved in the accident? This second question also involves what coverage is afforded the Nunns under these two policies and from which policy should their damages be paid first.

Milwaukee Mutual concedes that the Nunns could have stacked the two policies, the one on the Concord and the one on the Matador. Brief of Respondent at pp. 27–28. Therefore, damages incurred by the Nunns could have been paid from either policy.

Because the total damages of the Nunns was settled for $93,000, we hold as a matter of public policy this should be taken from the coverage provided on

776

the non-involved car which had a limit of $100,000. This leaves $100,000 from the involved auto's, Concord's, policy to be available to the three Martins to be settled or divided between them in accordance with the terms of the policy. The question of the division of the proceeds between the Martin claimants is not before us.

As noted by the court in *Unigard Ins. Co. v. Yerdon,* 417 So. 2d 713, 714–15 (Fla. Dist. Ct. App. 1982):

> "The better rule in such situations would be to require the insurer to allow stacking by the [named insureds] if necessary, so that the [occupancy insureds] will have the maximum coverage available to them. There is much to commend this position. It does not expose the insurer to any greater liability than that already contemplated by its policies since the [named insured] has paid for the privilege of stacking as part of his premium; it does not allow the [occupancy insureds] to stack the named insured's policies; it does not preclude the insurer from settling with any claimant at any time it chooses; and it provides the maximum claim for indemnity for all claims under the policy. In short, it conforms to the contractual undertaking, provides maximum coverage to all insureds, reduces the opportunities for questionable settlement techniques, and, above all, it reaches a more equitable result." (Citation omitted.)

We agree with the *Unigard* court.

*By the Court.*—The orders of the circuit court are reversed and the cause remanded for further proceedings not inconsistent with this opinion.