ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant-
Cross Respondent,†

v.

Ralph GIFFORD and Shelly Gifford, Defendants-
Respondents-Cross Appellants.

Court of Appeals

*No. 92–1449. Submitted on briefs May 4, 1993.—Decided July
20, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review pending.

341

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *Terrance E. Davczyk* and *Christopher J. Conrad* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

On behalf of the defendants-respondents-cross appellants, the cause was submitted on the briefs of *Thomas W. Druck* of *Druck & Swartzberg, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J. Allstate Insurance Company commenced this declaratory-judgment action seeking a declaration that Ralph and Shelly Gifford could not collect under their Allstate automobile policy for damages sustained in an automobile accident in excess of what the Giffords received from the negligent party's liability insurer. The trial court declared that the Giffords are entitled to recover $25,000 from Allstate. Allstate appeals.[1]

This case presents common insurance-law issues rendered increasingly complex by a policy-framework novel to Wisconsin case law: (1) whether the Giffords' claim falls within the terms of coverage set out in their policy; (2) whether Allstate's contractual promise, under the rubric of its *uninsured*-motorist coverage, to provide coverage against *underinsured* motorists, is illusory; and, (3) whether Allstate's liability, if any, must be reduced by the amount received by the Giffords from the tortfeasor's insurance company. We reverse and remand for further proceedings.

## I.

The facts are undisputed. Ralph Gifford was injured when the car he was driving collided with one driven by Johnny Peoples. Peoples had liability coverage of $25,000, which Peoples' insurer paid to the Giffords. The Giffords, however, contend that their damages exceed $25,000, and claim that they are entitled to $25,000 in underinsured-motorist coverage from their insurer, Allstate, for each of their two cars insured by Allstate, a 1984 Dodge Aries and a 1980

---

[1] The Giffords cross-appeal, arguing that under the trial court's rationale they are entitled to $50,000, rather than $25,000. We do not reach the merits of the cross-appeal, however, because that issue is not yet ripe for decision.

Plymouth Volare. The record does not reveal whether separate premiums were paid for each car under the policy, or what was paid for the various coverages purchased.

Originally, the Giffords' Aries/Volare policy did not provide underinsured-motorist coverage. The coverage was added by an "Uninsured Motorists Endorsement—Wisconsin," which reads in part:

A. The following paragraph has been added to the provision entitled **"An uninsured auto is . . ."** of Part V, Uninsured Motorists Insurance:

**An uninsured auto is. . .**
**(5)** an underinsured **motor vehicle** which has bodily injury liability protection in effect and applicable at the time of the accident, but less than the applicable limit of Uninsured Motorist Coverage shown on the declarations page.

B. The following paragraphs are added to the **"Limits of Liability"** provision of Part V, Uninsured Motorists Insurance:

If the loss involves the use of an underinsured auto, the limit of this coverage will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured auto, including partial payments made by an insolvent insurer.

Thus, Allstate insured the Giffords against underinsured autos as part of its *uninsured*-motorist coverage.

The grant or denial of relief in a declaratory judgment action is a matter within the discretion of the trial court. *United Fire & Casualty Co. v. Kleppe*, 174 Wis. 2d 637, 640, 498 N.W.2d 226, 227 (1993). A trial court acts outside the ambit of that discretion when, as we conclude was the case here, it bases its discretionary decision upon an error of law. *Id.*, 174 Wis. 2d at 641, 498 N.W.2d at 227.

Resolution of this case turns on the interpretation of the underlying insurance policy. Our review is *de novo*. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). We interpret an insurance policy using the same rules of construction we apply to other contracts. *Ibid.* The policy language, as the agreed-upon articulation of the bargain reached between the parties, is dispositive to the extent it is plain and unambiguous. *Id.*, 155 Wis. 2d at 811, 456 N.W.2d at 599 ("[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction.").

### 1. *The Coverage Issues.*

The Allstate policy here is plain on its face. Part V, the uninsured-motorists coverage section, provides that Allstate "will pay damages for bodily injury, sickness, disease or death" suffered by a "person insured" that are caused by the "owner or operator of an uninsured auto." Gifford is a "person insured" who suffered "bodily injury." The question presented, therefore, is whether Peoples' car was "an uninsured auto" as that term is used in the Allstate policy.

Peoples' car was not an uninsured auto as that term was defined in the *unamended* definitions in Part V of the Giffords' policy.[2] As noted, however, the endorsement broadened the definition of "uninsured auto" to include "underinsured" vehicles. Vehicles meeting the policy's definition of "underinsured," therefore, are entitled to be treated as "uninsured" under the policy.

The policy's definition of "underinsured" is substantively identical to the definition of "underinsured" that the Wisconsin Supreme Court held in *Smith* to be "unambiguous"—a vehicle is underinsured "when the owner or driver of the other vehicle maintains a policy with a lower coverage than" the insured's underinsured- motorist coverage. *See id.*, 155 Wis. 2d at 811, 456 N.W.2d at 599. Here, Peoples' car was insured for $25,000, the same amount as the Giffords' uninsured/underinsured-motorist coverage. The coverages being equal, Peoples' car was not an underinsured auto under the Giffords' policy definition, and, therefore, at first blush, it appears that the Giffords are not entitled to the coverage. *See ibid.*

The Giffords argue that for the purposes of calculating whether the "underinsured auto" definition was

---

[2] The policy gives four such "traditional" definitions:

**An uninsured auto is:**

(1) a **motor vehicle** which has no bodily injury liability bond or insurance policy in effect at the time of the accident.

(2) a **motor vehicle** covered by a bond or insurance policy which doesn't provide at least the minimum financial security requirements of the state in which **your** insured auto is principally garaged.

(3) a **motor vehicle** for which the insurer denies coverage, or the insurer becomes insolvent.

(4) a hit-and-run **motor vehicle** . . . .

met, their $25,000 of coverage for each car under the policy should be stacked, for a total of $50,000, not $25,000, of relevant coverage.[3] They argue that the underinsured-motorist coverage of their Allstate policy thus exceeded Peoples' $25,000 liability coverage, thereby meeting the policy's definition of "underinsured auto," and triggering the policy's uninsured-motorist coverage. Stacking, however, may not be used to determine, as a threshold matter, whether there is such coverage. *See Krech v. Hanson*, 164 Wis. 2d 170, 172–173, 473 N.W.2d 600, 601 (Ct. App. 1991). The trial court thus erred by stacking the coverages to con-

---

[3] "Stacking" is a term used in insurance cases "when the same insurer issues multiple policies and the insured seeks to aggregate the coverage from each of the policies." *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 39–40 n.1, 489 N.W.2d 915, 916 n.1 (1992). Stacking has its roots in the legislative mandate of section 631.43(1), Stats., which reads, in relevant part:

> GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. . . .

Stacking insurance policies to aggregate coverage is allowed even where, as here, there is only a single insurance policy, so long as the insured pays separate premiums for two or more vehicles under the policy. *See Playman*, 171 Wis. 2d at 41, 489 N.W.2d at 917. There is no difference, for stacking purposes, between underinsured and uninsured motorists coverage. *Id.*, 171 Wis. 2d at 42, 489 N.W.2d at 917. Although the record before us does not reveal whether separate premiums were paid for each of the cars covered by the Giffords' policy, we proceed *arguendo* as if there were.

clude that the definitional requirements of the endorsement were met.

Our analysis is not, however, complete. We recently held that a policy provision is illusory if it defines coverage so that, in practice, it will never be triggered. *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 271, 500 N.W.2d 354, 356–357 (Ct. App. 1993). Where a policy provides illusory "coverage," it may need to be reformed to conform to the insured's expectations. *See Kaun v. Industrial Fire & Casualty Ins. Co.*, 148 Wis. 2d 662, 669–671, 436 N.W.2d 321, 324–325 (1989).

This case is governed by *Hoglund*. Here and in *Hoglund*: (1) the coverage at issue was triggered only when the measuring coverage-limits are greater than the liability-coverage of the responsible vehicle, *see Hoglund*, 176 Wis. 2d at 270, 500 N.W.2d at 356;[4] (2) the measuring coverage-limit was $25,000, equal to the statutory minimum for liability-coverage sold in Wisconsin, *see* section 344.33, Stats., *compare Smith*, 155 Wis. 2d at 813–814, 456 N.W.2d at 600 (refusing to consider an argument that coverage was illusory based upon "hypothetical facts," where measuring coverage-limit was $50,000); and (3) there would not be coverage under the policies if the responsible vehicle was one from out-of-state and had liability coverage less than the Wisconsin minimum. *See Hoglund*, 176 Wis. 2d at

---

[4] We use the term "measuring coverage-limit" in recognition of the fact that, "[t]he status of being underinsured is measured against another insurance policy, not the injured party's damages." *Grabski v. Finn*, 630 F. Supp. 1037, 1048 (E.D. Wis. 1986).

271, 500 N.W.2d at 356.[5] Thus, as in *Hoglund*, the Giffords could never receive additional coverage *via* the uninsured-motorists endorsement if the responsible vehicle was insured under Wisconsin law because the triggering requirements of the endorsement could, in practice, never be met. Accordingly, as in *Hoglund*, the endorsement is an illusory promise of additional coverage. *See Hoglund*, 176 Wis. 2d at 271, 500 N.W.2d at 357. Under *Hoglund*, however, a determination that a policy provides illusory "coverage" is not determinative of whether the policy should be reformed: the trial court must also determine that the insured had an "expectation" that such coverage would actually be provided. *See id.*, 176 Wis. 2d at 272, 500 N.W.2d at 357. This determination was never made here, and, therefore, we must reverse and remand for a hearing on that issue.

### 2. *The Reducing Clause.*

Allstate contends that it owes the Giffords nothing because they received $25,000 from Peoples' insurer. It relies on Part B of the uninsured-motorist-coverage endorsement in the Allstate policy, which reduces Allstate's coverage-liability "by all amounts paid by or on behalf of the owner or operator of the underinsured auto." The applicability of this reducing clause first requires a determination of whether there is coverage

---

[5] The unamended Uninsured Motorists Insurance section of the Giffords' policy defined "an uninsured auto," in part, as "a **motor vehicle** covered by a bond or insurance policy which doesn't provide at least the minimum financial security requirements of the state in which **your** insured auto is principally garaged." As noted, Wisconsin requires liability insurance of at least $25,000. Section 344.33(a), Stats.

under the policy at all, because, unlike the expanded definition of "uninsured" reflected in Part A of the endorsement, the reducing clause limits coverage-liability *after* that liability has been triggered. *See Smith,* 155 Wis. 2d at 810, 456 N.W.2d at 598. It remains for the trial court on remand to make that threshold determination. If the trial court finds coverage, it will have to decide whether the reducing clause applies. We therefore address the issues raised by the reducing clause. *See State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal). We conclude that the reducing clause is unenforceable. *See Kleppe,* 174 Wis. 2d at 643, 498 N.W.2d at 228–229.

*Kleppe* held that a clause that "reduces compensation available to an insured under [an uninsured-motorist] policy is void and unenforceable, as a matter of law, if such reduction would be unavailable to a tortfeasor." 174 Wis. 2d at 643, 498 N.W.2d at 228.[6] The clause Allstate seeks to apply here would reduce the limit of its coverage-liability by "all amounts paid by or on behalf of the owner or operator of the underinsured auto." A clause that reduces the limits of coverage-*liability* by amounts paid to the insured by the tortfeasor cannot logically apply to that tortfeasor, and, therefore, fails the *Kleppe* test.[7]

---

[6] *Kleppe* concerned uninsured-motorist coverage. Here, as noted, Allstate defined its uninsured-motorist coverage to encompass underinsured motorists; *Kleppe* is, therefore, directly on point.

[7] An attempt by Peoples, the tortfeasor here, or his insurer, to apply the clause would be absurd. Peoples' liability coverage was $25,000. That amount was paid to the Giffords by Peoples' insurer. Were the reducing clause available to Peoples here, it

*By the Court.*—Judgment reversed and remanded for further proceedings.

would reduce the limit of his liability *coverage* by every dollar he paid. Having paid $25,000, his liability coverage would be reduced to zero—entitling his insurer to a rebate of the very payment just calculated to have so reduced the coverage. Of course, any payments made by either Peoples or Peoples' insurer would reduce what they would ultimately owe—they do not, however, reduce the extent of either their liability or coverage.