Donald SOBIESKI, Plaintiff-Appellant,

v.

FARMERS INSURANCE EXCHANGE, Defendant-Respondent.†

Court of Appeals

*No. 93–0579. Submitted on briefs November 11, 1993.—Decided December 22, 1993.*

(Also reported in 510 N.W.2d 796.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *T. Michael Schober* and *Ronald S. Stadler* of *Schober & Radtke, S.C.,* of New Berlin.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Michael L. Quirk* and *Timothy L. Lyons* of *O'Neill, Schimmel, Quirk & Carroll, S.C.,* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. We hold that under the language of the insurance contract at issue here, when the insurer defined uninsurance as specifically including underinsurance, all Wisconsin case law concerning an insurer's duties and limitations in uninsurance situations applied instead of that case law relating to underinsurance. We reverse the trial court's judgment dismissing the complaint grounded upon its belief that a "drive other cars" exclusion applied because this was an underinsurance case, not an uninsurance case.

Donald Sobieski's complaint alleged that Patricia Pufahl was negligent when her vehicle struck Sobieski's motorcycle. Sobieski received extensive injuries, including amputation of his left leg above the knee. He further alleged that while Pufahl had automobile liability insurance, the liability limit was $25,000 and that his damages far exceeded this amount. He filed a claim with the insurer of his father's automobile, Farmers Insurance Exchange, seeking either uninsurance or underinsurance benefits.

Farmers denied the claim. It observed that the underlying policy has a "drive other cars" exclusion which explains that the company will not be responsible under the policy for injuries incurred while using motor vehicles other than the one listed in the policy. It reasoned that its policy did not cover Sobieski while he operated a vehicle other than the one for which the policy was purchased. It conceded that had this been an uninsurance situation, Wisconsin law provides that its "drive other cars" exclusion would be unenforceable. *See Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 181, 361 N.W.2d 680, 685 (1985). However, the fact that Pufahl had at least the minimum amount of

insurance required by law made this an underinsurance claim. Wisconsin case law allows Farmers to enforce a "drive other cars" exclusion in underinsurance situations. *Schwochert v. American Family Mut. Ins. Co.*, 139 Wis. 2d 335, 347, 407 N.W.2d 525, 530-31 (1987), *aff'd*, 172 Wis. 2d 628, 494 N.W.2d 201 (1993).

Sobieski sued Farmers and sought a declaratory judgment from the trial court concerning the interpretation of specific language in the Farmers insurance contract. The trial court sided with Farmers and Sobieski appeals.

The interpretation of an insurance policy is a question of law which this court decides independently of the trial court. *Lambert v. Wrensch*, 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373-74 (1987).

Farmers' policy placed an underinsurance provision within that part of the policy concerning uninsured motorists. In pertinent part, the policy stated:

> 3. **Uninsured motor vehicle** means a motor vehicle which is:
>
> . . . .
>
> b. Insured by a bodily injury liability bond or policy . . . which provides coverage in amounts less than the limits of Uninsured Motorists Coverage shown in the Declarations.

Sobieski argues that the policy is clear and unambiguous in that there can be only one construction of the policy: where a tortfeasor's liability insurance provides coverage in an amount lower than the insured's uninsured motorist limit, the tortfeasor's vehicle is

considered to be uninsured. Sobieski acknowledges that sec. 632.32(4)(a), Stats., defines an "uninsured motor vehicle" as that vehicle which has no insurance to the legal limit of liability. However, he cites *Wegner v. Heritage Mut. Ins. Co.,* 173 Wis. 2d 118, 124, 496 N.W.2d 140, 142 (Ct. App. 1992), for the proposition that insurers are free to broaden their uninsured coverage. Sobieski asserts that the clear language of the policy shows that Farmers broadened coverage here.

Farmers agrees that the clause is clear and unambiguous, but claims that it provides underinsured motorist coverage. It argues that simply because the policy states that an uninsured motor vehicle means a vehicle which is underinsured, this does not mean that the insurer meant to provide uninsurance protection in an underinsurance situation. Farmers argues that to interpret the underinsurance clause simply by its placement within the uninsured motorist part of the policy is unreasonable because it puts placement over the plain meaning of the clause—which is to provide underinsurance. Farmers asserts that to read it any other way would be absurd. Farmers points out that the language provided in the clause is identical to the language interpreted in such underinsurance cases as *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 456 N.W.2d 597 (1990). It further contends that the language is the standard and commonly understood definition of an underinsured motorist vehicle. It argues that any reasonable person would interpret the clause to be an underinsurance definition.

Subsequent to the briefs of the parties, another panel of the court of appeals wrote *Allstate Ins. Co. v. Gifford,* 178 Wis. 2d 341, 504 N.W.2d 370 (Ct. App. 1993). We note that the trial court in this instant case did not have the benefit of *Gifford* when it made its

decision. We asked the parties to brief the issue in this case in light of *Gifford*. The parties submitted supplemental briefs and we now decide that *Gifford* controls this case.

Gifford was injured when the car he was driving collided with a car driven by Peoples. Peoples had liability coverage of $25,000. Gifford and his wife contended that damages exceeded $25,000 and made a claim against their own insurer for underinsurance coverage. Gifford had two cars and two policies with Allstate, both with $25,000 underinsurance/uninsurance limits. *Id.* at 344-45, 504 N.W.2d at 371-72. Gifford made a claim under both, attempting to stack the coverages. Allstate declined coverage, noting that since Gifford's underinsurance amount was $25,000, it was the same amount as Peoples' insurance limit and, therefore, Peoples' car was not an underinsured auto under Gifford's policy definition. Gifford replied that if both Allstate coverages were stacked, then the amount of underinsurance coverage would be $50,000, not $25,000. *Id.* at 347-48, 504 N.W.2d at 373. Allstate responded that stacking cannot be used in underinsurance situations, only in uninsurance situations.

The court of appeals noted that the original policy did not have an underinsurance endorsement. However, one was added such that, like this case, it became part of the definition of uninsured motorist coverage. The court then wrote:

> Peoples' car was not an uninsured auto as that term was defined in the *unamended* definitions in Part V of the Giffords' policy. As noted, however, the endorsement broadened the definition of "uninsured auto" to include "underinsured" vehicles. Vehicles meeting the policy's definition of "underin-

329

sured," therefore, are entitled to be treated as "uninsured" under the policy. [Emphasis in original.]

*Id.* at 347, 504 N.W.2d at 372 (citation omitted). We read this statement to mean that if the insurer broadens its definition of uninsurance beyond the "traditional" definitions so as to include underinsurance, then the policyholder may have all the benefits under Wisconsin law that are provided in an "uninsurance" situation. Applying *Gifford* here, Pufahl's vehicle must be treated as "uninsured" under the policy.

Farmers attempts to distinguish *Gifford*. First, it claims that since this is a "drive other cars" exclusion case and *Gifford* was a stacking case, the result should be different. We disagree. In both situations, coverage will be allowed if the case is treated as an "uninsurance" case and not allowed if treated as an "underinsurance" case. The reasoning in *Gifford* applies here with equal force. Second, it asserts that since *Gifford* came from another district of the court of appeals, we are not bound to follow it. This is a frivolous argument. We have written countless times that we are one court and are bound by decisions of other districts. *See, e.g., Mallon v. Campbell*, 178 Wis. 2d 278, 289, 504 N.W.2d 357, 362 (Ct. App. 1993); *see also In re C.J.*, 120 Wis. 2d 355, 358 n.3, 354 N.W.2d 219, 221 (Ct. App. 1984).

Third, Farmers contends that the *Gifford* court did not address *Schwochert*. This is also a hollow argument. Although the *Gifford* court did not mention *Schwochert*, it did cite *Smith* and noted that the underinsurance language in the case it was deciding was substantively identical to the language of the policy

found in *Smith*. We are convinced that the court of appeals was well aware of *Schwochert* when it wrote its opinion.

Fourth, Farmers notes that while uninsurance is statutorily mandated, underinsurance is not mandated. From this, Farmers argues that every underinsurance situation generates duties and responsibilities spelled out by Wisconsin case law that differ from uninsurance situations. We gather that the point Farmers is trying to make is that underinsurance can never be uninsurance and it would be absurd for any reasonable person to assume that underinsurance could ever be subsumed within the definition of uninsurance. This argument, however, ignores the fact that while uninsurance has its "traditional" definitions, and while these "traditional" definitions are codified by our statutes on uninsurance, an insurer is always free to broaden its definition of uninsurance. *See Wegner*, 173 Wis. 2d at 124, 496 N.W.2d at 142. In fact, this is the exact holding of *Gifford*—that subsuming underinsurance within the general definition of uninsurance, the insurer in that case broadened the traditional definition of uninsurance. *See Gifford*, 178 Wis. 2d at 347 & n.2, 504 N.W.2d at 372. We conclude that *Gifford* governs the result in this case.

Even were *Gifford* not the published law of this state, we would still be inclined to reverse. It is axiomatic that we must read insurance policies from the standpoint of a reasonable insured. *Dailey v. Secura Ins. Co.*, 164 Wis. 2d 624, 628, 476 N.W.2d 299, 300 (Ct. App. 1991). It is a further maxim that a person entering into any contract is presumed to know the law. *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 718, 468 N.W.2d 755, 758 (Ct. App. 1991). From read-

ing the policy, a reasonably prudent person knowing the law might read the policy to say that the underinsurance clause is, in actuality, separate from the rest of the uninsurance clauses. However, a reasonably prudent person, knowing that insurers can voluntarily broaden coverage, might also read the policy to say that uninsurance includes an underinsurance situation. Thus, the policy contains an ambiguity. Where ambiguous, insurance contracts are construed against the drafter. *See Smith*, 155 Wis. 2d at 811, 456 N.W.2d at 598. We would likely have found for Sobieski irrespective of *Gifford*.

This can all be easily avoided by insurers in the future simply by placing underinsurance coverage in a separate and distinct part of the policy from uninsurance. By doing so, both the insurer and the insured know that, in certain terms, there are two types of coverage and neither has any relationship to the other. We reverse the grant of summary judgment in favor of Farmers and remand to the trial court for further proceedings.

*By the Court.*—Judgment reversed and cause remanded with directions.