Allison MARKUNAS, Plaintiff-Appellant,†

v.

SENTRY INSURANCE COMPANY, Defendant-Respondent.††

Court of Appeals

*No. 93–0854. Submitted on briefs January 4, 1994.—Decided June 14, 1994.*

(Also reported in 519 N.W.2d 688)

†Petition to review denied.
††Petition for cross review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *D. Michael Guerin* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Joseph D. McDevitt* and *Terence*

*B. Kelly* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J.  Allison Markunas appeals from a judgment dismissing her declaratory judgment action, in which she sought underinsured motorist (UIM) coverage from Sentry Insurance Company. The trial court granted summary judgment in favor of Sentry after concluding: (1) Markunas, as a passenger in an automobile not listed on the declarations page of the Sentry policy, was not covered by the host driver's UIM coverage; (2) even if the policy did provide such coverage to her, Markunas could not collect on the UIM provision of Sentry's policy because the other vehicle involved in the accident was not underinsured; and (3) even if the other vehicle was underinsured, Markunas could not stack the host driver's UIM coverage.

On appeal, Markunas challenges each of the trial court's determinations. She seeks $500,000 in UIM coverage on each of the three vehicles listed in the Sentry policy, for a total of $1.5 million in UIM coverage. We conclude that the policy did provide UIM coverage to passengers of unlisted automobiles driven by a named insured. We also conclude that the other vehicle involved in the accident was underinsured. We agree with the trial court, however, that Markunas could not stack the UIM coverages under the Sentry policy.[1]

---

[1] Markunas raises a fourth and final issue on appeal regarding the operation of the policy's reducing clause. Her argument, however, begins with the assumption that she can stack the UIM coverages for a total available UIM limit of $1.5

We will reverse a trial court's grant of summary judgment only where the court incorrectly decided an issue of law or where material facts are in dispute. *Martin v. Milwaukee Mut. Ins. Co.*, 146 Wis. 2d 759, 766, 433 N.W.2d 1, 3 (1988). Construction of an insurance contract presents a question of law that we review *de novo. Id.* Where language in an insurance contract is unambiguous, we simply apply the policy language to the facts of the case. *Grotelueschen v. American Family Mut. Ins. Co.*, 171 Wis. 2d 437, 447, 492 N.W.2d 131, 134 (1992). Any ambiguity in an insurance contract, however, is construed in favor of coverage. *Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 219, 485 N.W.2d 267, 270 (1992).

The facts of this case are undisputed. Markunas was severely injured in a two-car accident. She was a passenger in a car that was driven by Mark Kapocius. The vehicle itself was owned by Mark's brother, Michael Kapocius, and was insured by a State Farm Mutual Insurance Company policy with limits of liability of $100,000. Mark, the driver, was insured under a Sentry auto policy, which provided $500,000 in liability coverage. The Sentry policy was issued to Mark Kapocius' father, Vyto Kapocius, and Mark Kapocius was a named insured under the Sentry policy because he was family member who was a resident of his father's household.[2] The second vehicle involved in the

million. Our resolution of the stacking issue makes that particular reducing clause argument moot.

[2] Under Sentry's "Plain Talk" car policy, the named insured was referred to as "you." The policy provided the following definition:

> **You, Your;** means the person named on the declarations page and that person's husband or wife if a resident of the same household. It

accident was driven by Sylvester Ripinski, and was insured by a $100,000 liability policy with American Family Insurance Company. Each of the insurance companies paid Markunas their liability policy limits. Thus, Markunas collected a total of $700,000 under the liability coverage of all three policies.

The issue presented on appeal is whether Markunas could also recover under the UIM coverage in Mark's Sentry policy. The policy listed three automobiles. Mark was not driving one of the listed automobiles at the time of the accident. Because Markunas was not a named insured and was not an occupant of a *listed* vehicle at the time of the accident, Sentry argues that its UIM coverage does not apply to her. We disagree.

Our analysis begins with an examination of the language of the policy. Sentry's original policy provided uninsured motorist (UM) coverage. By endorsement, Sentry amended the UM coverage to include coverage for underinsured motor vehicles.[3] The policy provides the following:

### UNINSURED MOTORIST INSURANCE

**Our Promise To You**

We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured *motor vehicle* is legally obligated to pay

---

also means a member of the family who is a resident of the household and who doesn't own a car or whose spouse doesn't own a *car*.

[3] As this court demonstrated in *Allstate v. Gifford*, 178 Wis. 2d 341, 347-48, 504 N.W.2d 370, 372-73 (Ct. App. 1993), depending upon the definition of the terms in the policy, the law may treat UM and UIM coverage as one and the same. The *Gifford* issue is not raised on appeal and does not affect our analysis.

because of bodily injury you suffer in a *car accident* while *occupying* a *car* or, as a pedestrian, as a result of having been struck by an uninsured *motor vehicle.*

**Protection For Others**

Anyone *occupying*, with *your* permission, a *car* we insure has the same rights and obligations that *you* have under this insurance.

Sentry argues that Markunas does not fall within the provision of "Protection For Others" because she did not occupy a car listed on the declarations page of the policy. Markunas, on the other hand, argues that the policy does not limit UIM coverage to occupants of *listed* vehicles. Markunas' position is that, according to the policy's definition of "cars we insure," she *did* occupy a car that Sentry insured. The policy provides the following:

**CARS WE INSURE**

**Your Cars**

We insure the *car* described on the declarations page and any car you replace it with . . . .

**Substitute Cars**

We insure a substitute *car* when the *car* described on the declarations page . . . can't be used . . . .

**Other Cars**

We insure other *cars you* use with the permission of the owner . . . .

Markunas argues, that under the unambiguous language of the policy, the car in which she was a

passenger at the time of the accident, was a car that Sentry insured—it was an "other car" driven by a named insured. We agree with Markunas. Sentry, however, argues that the "other cars" language is intended to provide *liability* coverage to non-owned vehicles which a named insured uses with the permission of the owner, and the language should not apply to the UM and UIM coverage. We disagree with Sentry's interpretation of the policy language.

The section of the policy entitled "Cars We Insure" is a separate section which appears on page one of the policy. The policy then provides separate sections entitled "Liability Insurance," "Medical Expense Insurance," "Uninsured Motorist Insurance," "Collision Insurance," etc. Thus, if Sentry had intended the "other cars" provision to apply only to liability insurance, that language could have been placed within the liability insurance provisions of the policy.

Furthermore, three separate sections of the policy contained a "protection for others" provision. As quoted above, the UM/UIM coverage provided "protection for others" to "[a]nyone *occupying*, with *your* permission, a *car* we insure . . . ." The policy's "Medical Expense Insurance" contained the identical language. The "Liability Insurance," however, provided "protection for others" to "[a]nyone using, with your permission, a *car* **described on the declarations page**." (Bold added.) If Sentry had intended the UM/UIM coverage to apply only to occupants of a "car described on the declarations page," Sentry could have used that language, not only in the liability provisions, but also in the UM/UIM provisions. It did not use that language, and the unambiguous language of the policy as written requires that we conclude that Markunas was occupying a vehicle

that Sentry insured. Thus, the policy afforded UIM coverage to Markunas as an occupancy insured.

The next issue we must address is whether the other vehicle involved in the accident was an underinsured motor vehicle. Again, we turn to the language of the policy. The UIM endorsement provides the following:

> This endorsement amends the Uninsured Motorist Insurance to provide You protection for *Car Accidents* with underinsured Motor Vehicles.
>
> The "Uninsured Motor Vehicles" section of the UNINSURED MOTORIST INSURANCE is amended to include an underinsured *Motor Vehicle*. An *underinsured Motor Vehicle* is a *Motor Vehicle* with liability protection afforded by liability insurance policies or bodily injury liability bonds with limits the sum of which are less than the limits provided by this endorsement.

The underinsured motorist limits on the Sentry policy were $500,000. Thus, Markunas concedes that the car in which she was a passenger was not underinsured according to the language of the policy because that vehicle was afforded $600,000 in coverage—$500,000 from the driver's liability insurance, and $100,000 from the liability insurance on the car. Markunas argues that the Ripinski vehicle, which had liability limits of $100,000, was underinsured according to the Sentry definition of underinsured. We agree. The Ripinski vehicle was not a "Motor Vehicle with liability protection" of $500,000 or more. The liability protection carried by the host car and driver is not "afforded" to the Ripinski vehicle. Thus, the Ripinski

860

vehicle was an underinsured vehicle under the provisions of the policy.

The final issue that we decide is whether Markunas can stack the UIM coverage under the Sentry policy.[4] We conclude that she cannot. In *Martin v. Milwaukee Mut. Ins. Co.*, the Wisconsin Supreme Court held that an occupancy insured, unlike a named insured, is not able to stack UM coverage on all vehicles listed in a policy. *Martin*, 146 Wis. 2d at 766-76, 433 N.W.2d at 3-7.[5] Rather, the occupancy insured is afforded UM coverage attributable only to the vehicle in which he or she is riding. *Id.* Here, Markunas occupied only one vehicle, that vehicle was a car that Sentry insured, and that vehicle carried UIM coverage of $500,000.

Markunas attempts to distinguish the present case from *Martin*, however, based on the language from the Sentry UM/UIM coverage which provides that the occupancy insured "has the same rights and obligations that *you* have under this insurance." Markunas reasons that because the named insured would be able to stack the UM/UIM coverage on all three listed vehicles, she should be entitled to the same benefit. We disagree.

---

[4] "Stacking" is the term used to describe the attempt to aggregate the coverages for multiple policies. *See Gifford*, 178 Wis. 2d at 348 n.3, 504 N.W.2d at 373 n.3.

[5] While *Martin* dealt with UM coverage, the parties raise no arguments as to why the holding is not equally applicable to a case involving UIM coverage. *See Gifford*, 178 Wis. 2d at 348 n.3, 504 N.W.2d at 373 n.3 ("There is no difference for stacking purposes, between underinsured and uninsured motorist coverage."). Further, as noted above, *supra* note 2, the coverage in the present case may indeed be treated as if it were UM coverage rather than UIM coverage for all purposes.

Markunas does have the same rights as the named insured with respect to the insurance coverage applicable to the "insured vehicle." It is true that the named insured can also benefit from the coverage on the other vehicles, however, "each auto is considered to have separate and independent coverage." *See Martin*, 146 Wis. 2d at 763, 433 N.W.2d at 2. Thus, we conclude that applying the *Martin* rule to this case still affords to Markunas the same rights that the named insured would have under "this insurance." The fact that the named insured also has "separate and independent coverage" by virtue of the ownership of other vehicles, does not create a situation that is inconsistent with the language of the Sentry policy. Markunas cannot stack the UIM coverage under the Sentry policy.

In conclusion, Markunas was an occupancy insured and the Ripinski vehicle was an underinsured motor vehicle under the Sentry policy. Markunas as an occupancy insured cannot stack the UIM coverage, and thus, the UIM coverage is limited to $500,000. The trial court did not reach the issue of how the policy's reducing clause would be applied to this case, and the parties did not brief the issue on appeal.[6] Thus, we remand this case to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.

---

[6] On appeal, the parties' arguments regarding the reducing clause *assumed* that Markunas could stack the UIM coverage. The parties did not address, and the trial court did not decide, how the reducing clause would be applied to this case if no stacking were allowed.

WEDEMEYER, P.J. (*dissenting*). I respectfully dissent from my colleagues pursuant to my belief that *Martin v. Milwaukee Mutual Ins. Co*, 146 Wis. 2d 759, 433 N.W.2d 1 (1988), controls the case at hand, i.e., the appellant was not occupying a vehicle insured by Sentry and she was not a named insured. Along these lines I would adopt the well-reasoned decision of the trial court—the Honorable Patricia S. Curley.