DOWNEY, Judge.
Unigard Insurance Company appeals from an amended final judgment which ordered Unigard to pay its Class I insured from his stacked uninsured motorist policies. Since the trial court’s order did not expand Unigard’s total exposure, but merely assured that certain Class II insureds would receive coverage, we affirm.
The undisputed evidence reflects that Coenen was the owner/driver of an automobile which was involved in an accident with an uninsured motorist on December 7th, 1975. Yerdon, Krickovich and Walter were passengers in the Coenen vehicle. All four riders were injured.
At the time of the accident, Coenen owned two automobiles which were insured by Unigard. The uninsured motorist coverage on each vehicle was $50,000 per person, $100,000 per accident. Passenger Yerdon also owned two vehicles which were insured by State Automobile Mutual Insurance Company. The uninsured motorist coverage for each of Yerdon’s vehicles was $100,-000 per person, $300,000 per accident.
As a result of the injuries sustained in the December 7th accident, Yerdon and his wife filed a claim against their insurer, State Auto. The claim was arbitrated and they received $150,000. State Auto then filed a claim against Unigard, contending that Yerdon was entitled to $50,000 coverage under the Coenen/Unigard policy and, consequently, Unigard should pay a pro rata portion (Véth — $30,000) of the Yerdons’ arbitration award. Unigard responded that it had already paid out $94,861.53 in uninsured motorist benefits to Coenen, and the other two passengers, Krickovich and Walter. The monies were divided as follows:
Coenen $45,758.20
Krickovich 18,383.33
Walter 30.770.00
$94,861.53
Since the Unigard policy provided uninsured motorist coverage of $50,000 per person, $100,000 per accident, Unigard took the position that only $5,138.47 remained available for distribution. Accordingly, it issued a draft in this amount to State Auto.
Unsatisfied, State Auto pursued its complaint for declaratory relief and ultimately *714 prevailed. The trial court held that Uni-gard should have factored in Coenen’s right to stack his two policies before declaring that the coverage had been exhausted. The court reasoned that since Coenen had paid separate premiums for uninsured motorist coverage on each of his two automobiles, he had a right to stack coverage and, thus, an aggregate sum of $100,000 was available to satisfy his claim. In essence, the court ruled that the $45,758.20 which Unigard had paid to Coenen should have been deducted from the stacked portion of Coenen’s coverage. Utilizing this procedure, the court held that sufficient funds remained available to satisfy all of the State Auto/Yerdon claim.
Among the four injured persons only Coe-nen was a Class I insured vis-a-vis the Uni-gard policy because Coenen, the owner of the two automobiles insured under the Uni-gard policy, had paid the additional premium for uninsured motorist coverage. The other three injured persons (not being members of Coenen’s family residing in his household) were Class II insureds under the Unigard policy. See, Mullis v. State Farm Mutual Automobile Insurance Company, 252 So.2d 229 (Fla.1971); Cox v. State Farm Mutual Automobile Insurance Company, 378 So.2d 330 (Fla. 2d DCA 1980).
Unigard takes the position (quite properly) that it furnished only $100,000 in uninsured motorist coverage for injuries to Class II insureds (Krickovich, Walter and Yerdon) and that only Coenen, as a Class I insured, was entitled to stack the second policy if his damages exceeded $50,000. Unigard then reasons (we think improperly) that since it had already paid from one policy the sum of $94,861.53, including the claim of Coenen, there remained only $5,138.47 available to Yerdon, who, as a Class II insured, was not entitled to stack Coenen’s second policy. State Automobile and Yerdon, on the other hand, contend that in the situation presented by these facts there was available from Unigard a total of $150,000.[1] Thus, if Unigard had paid the claims of the Class II insureds first ($18,000 to Krickovich, $30,000 to Walter, and $30,000 to Yerdon), Coenen’s claim could still have been paid in full by utilizing the coverage available to him under his second policy.
Unigard concedes that had the Class II insureds all been paid first,' Coenen would be entitled to be paid his $45,758.20 by stacking his second policy. Thus, if Uni-gard prevails the result will be that the amount of coverage available in a case where several classes of insureds are injured will fluctuate, depending upon the order in which the insurer elects to pay the claims.
We are cognizant of the general rule which allows an insurer in a multiclaim situation to make reasonable settlements with some of the claimants even though, in so doing, the insurance coverage is exhausted and other claimants are not paid. Harmon v. State Farm Mutual Automobile Insurance Company, 232 So.2d 206 (Fla. 2d DCA 1970). We note, however, that the cases espousing the Harmon rule appear to involve insurers whose exposure was a fixed amount. The distinguishing factor in this case is that Unigard’s exposure is not a fixed sum; it will fluctuate depending upon the order in which Unigard pays the various claims. Here, the available coverage was not exhausted; only the coverage under the single policy from which Unigard elected to make all payments was exhausted.
If Unigard’s position is to be the law of the land, the consequences are readily predictable. Every insurer with multiple claims involving different classes of uninsured motorist coverage will invariably follow the practice of delaying settlement of Class II claims until after disposition of any claims by Class I insureds, payment of the latter being made from the only policy which provides coverage for Class II in *715 sureds.[2] Granted, the settlements must be in good faith, but that is of little solace to the claimant whose available coverage is reduced or exhausted by the insurer’s first paying the very person who has other coverage available. Moreover, proving a lack of good faith would be, in most cases, extremely difficult.
The better rule in such situations would be to require the insurer to allow stacking by the Class I insureds, if necessary, so that the Class II insureds will have the maximum coverage available to them. There is much to commend this position. It does not expose the insurer to any greater liability than that already contemplated by its policies since the Class I insured has paid for the privilege of stacking as part of his premium; it does not allow the Class II insureds to stack the named insured’s policies; it does not preclude the insurer from settling with any claimant at any time it chooses; and it provides the maximum claim for indemnity for all claims under the policy. Cavalier Ins. Corp. v. Myles, 347 So.2d 1060, 1061 (Fla. 1st DCA 1977). In short, it conforms to the contractual undertaking, provides maximum coverage to all insureds, reduces the opportunities for questionable settlement techniques, and, above all, it reaches a more equitable result.
The judgment appealed from accomplished this result and, thus, we affirm.
HERSEY, J., concurs.
HURLEY, J., dissents with opinion.

. $100,000 per accident limit of one policy, and $50,000 per person limit of the second policy, the latter available only to Coenen.

. This is exactly the practice which was followed by State Farm Mutual Automobile Insurance Company in the case of Palombo v. Brous-sard, 370 So.2d 216 (La. 3d Cir.Ct.App.1979), in which case, on its facts, the court found the settlements to have been made in bad faith.