HOUGHTON WOOD PRODUCTS, INC., Plaintiff-Respondent,†

v.

BADGER WOOD PRODUCTS, INC., Defendant,

ASSOCIATED BANK GREEN BAY, National Association, Defendant-Appellant.

Court of Appeals

*No. 95–0004. Oral argument July 17, 1995.—Decided August 22, 1995.*

(Also reported in 538 N.W.2d 621.)

†Petition to review denied.

458

459

460

For the defendant-appellant there were briefs and oral argument by *Charles H. Wheeler* of *Nelson & Schmeling* of Green Bay.

For the plaintiff-respondent there was a brief and oral argument by *James B. Connell* of *Crooks, Low & Connell, S.C.* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Associated Bank Green Bay appeals a summary judgment in favor of Houghton Wood Products, Inc., in the amount of $25,572.16. Associated contends that the circuit court erred by concluding that a transaction between Houghton and Badger Wood Products, Inc., was a sale on approval under § 402.326, STATS. Because we conclude the transaction was not a sale on approval, we reverse the judgment and remand to the circuit court with directions to enter judgment for Associated Bank.

The facts are undisputed. Badger was a manufacturer of wood products. Associated Bank held Badger's three notes totaling over $3.7 million dollars secured with a security agreement dated August 31, 1992, which was filed with the Wisconsin Secretary of State. The security agreement covered a variety of assets belonging to Badger, including all raw materials and work in process. On September 15, 1993, Badger was in default on all of the notes. Badger surrendered all of its assets to Associated Bank, including three shipments of wood for making cabinets that had been delivered to Badger from Houghton in July and August. Associated Bank disposed of the wood and other assets and applied the funds realized to cover the indebtedness evidenced by the three notes.

461

Houghton commenced an action against Badger on September 21, 1993, seeking replevin of the wood or, alternatively, judgment in the amount of $25,572.16, the purchase price of the wood. On November 16, 1993, Houghton filed an amended complaint adding Associated Bank as a defendant. Houghton did not dispute Associated Bank's security agreement and right to assets Badger owned. However, Houghton maintained that it owned the wood because it was delivered pursuant to a sale on approval under § 402.326, STATS., Wisconsin's version of Uniform Commercial Code § 2-326.[1]

Both parties moved for summary judgment. The circuit court granted summary judgment in Houghton's favor, concluding that the transaction between Houghton and Badger was a sale on approval under § 402.326, STATS. The court recognized that under § 402.326(2), goods held on approval are not subject to the claims of the buyer's creditors until acceptance. The invoice accompanying the wood stated that acceptance could be accomplished only by payment of the purchase price. The circuit court held that because Badger did not pay any part of the purchase price, Houghton remained the owner of the wood and Associated Bank wrongfully converted it.

Our review of summary judgment is de novo. *Green Springs Farms v. Kersten,* 136 Wis. 2d 304, 314-15, 401 N.W.2d 816, 820 (1987).

---

[1] Houghton concedes that if the transaction was not a sale on approval, it had no right to the wood because it failed to perfect a purchase money security interest in the wood and therefore, its interests are inferior to Associated Bank's perfected security interest.

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Section 802.08(2), STATS. We will reverse a circuit court's grant of summary judgment only where the court incorrectly decided an issue of law or where material facts are in dispute. *Martin v. Milwaukee Mutual Ins. Co.*, 146 Wis. 2d 759, 766, 433 N.W.2d 1, 3 (1988). In this case, there is no genuine issue of material fact. Thus, we turn to our examination of the circuit court's conclusion that the delivery of the wood to Badger was a sale on approval.

The characterization of the transaction between Houghton and Badger involves applying ch. 402, STATS., to undisputed facts, which is a question of law this court reviews independently of the circuit court's conclusions. *State v. Williams*, 104 Wis. 2d 15, 21-22, 310 N.W.2d 601, 604-05 (1981).

Houghton contends that its sale of wood to Badger was a sale on approval and is governed by § 402.326, STATS., which provides in part:

> (1)   Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
>
> (a)   A "sale on approval" if the goods are delivered primarily for use; and
>
> (b)   A "sale or return" if the goods are delivered primarily for resale.
>
> (2)   Except as provided in sub. (3), goods held on approval are not subject to the claims of the buyer's

creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

██

Initially, we note that every presumption runs against a delivery to a merchant for resale being a sale on approval. Official U.C.C. comment cited in WIS. STAT. ANN. § 402.326, para. 1 (West 1963). This presumption attends commercial transactions because of the need to facilitate commercial interchange between buyers and sellers. Sales on approval place inventory in possession of one who does not have title to that inventory. Creditors, lenders and others could be misled as to the nature and value of a company's assets because of its possession of large quantities of inventory that it does not in fact own. Thus, while the code recognizes a sale on approval can exist in a commercial setting, there is a presumption based upon sound public policy against categorizing a commercial relationship as a sale on approval.

██

The code authorizes parties to agree that a transaction is a sale on approval. Section 402.326(1), STATS.; see also 3A RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE, § 2-326:3 at 413 (3d ed. 1995) (parties may expressly determine whether the transaction is a sale on approval or a sale or return). We conclude it is appropriate to examine the agreement and the parties' actions to determine whether the transaction was a sale on approval as viewed by a reasonable creditor. This approach is consistent with our supreme court's recent holding in *Armor All Prods. v.*

*Amoco Oil Co.*, 194 Wis. 2d 35, 533 N.W.2d 720 (1995), addressing § 402.326(3).[2]

In *Armor All*, the Wisconsin Supreme Court held that the test for whether § 402.326(3), STATS., applies is whether an objective analysis of the transaction documents, the course of performance between the parties and the actions taken by the bailee could lead a reasonable creditor to conclude that a consignment existed. *Id.* at 53, 533 N.W.2d at 728. The parties' subjective intent does not control. *Id.* We see no reason to apply a standard other than the objective standard demanded by our supreme court for interpreting subsec. (3) of § 402.326 to interpret subsecs. (1) and (2) of the same statute. We therefore conclude that the nature of the transaction between Houghton and Badger is to be determined by an examination of the transaction documents and the parties' performance, rather than by an examination of the parties' subjective intent.

Not only is an objective analysis consistent with our supreme court's recent ruling, it will also protect

---

[2] Section 402.326(3), STATS., states:

> Where goods are delivered to a person for sale and such person maintains a place of business at which the person deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. This subsection is applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery:
>
> (a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or
>
> (b) Establishes that the person conducting the business is generally known by that person's creditors to be substantially engaged in selling the goods of others; or
>
> (c) Complies with the filing provisions of ch. 409.

the rights of creditors who rely on transaction documents when determining whether to extend credit. If the parties' subjective intent controlled, creditors would be forced to look beyond document language to determine what the parties intended. This would wreak havoc in the commercial arena as creditors struggled to determine the intent behind every contract. Use of an objective analysis will minimize these problems.

Our objective analysis begins with an examination of the invoices sent with the three deliveries of wood. The front of each invoice contains the following statements:

> PAST DUE ACCOUNTS WILL BE CHARGED 11/2% INTEREST PER MONTH.
>
> ANY SALES OR USE TAX TO BE ASSUMED BY THE PURCHASER.
>
> CLAIMS FOR DEDUCTION MUST BE MADE WITHIN TEN DAYS AFTER RECEIPT OF SHIPMENT.
>
> . . . .
>
> Lumber is to be inspected according to the rules and regulations of THE NATIONAL HARDWOOD LUMBER ASSOCIATION. In case of dispute, Inspection by NHLA inspector and terms and conditions of the NHLA SALES CODE shall govern.
>
> The terms and conditions contained on the reverse side of this invoice are expressly incorporated into the contract of sale for the goods described herein between Houghton Wood Products, Inc. and the Customer named herein.

The reverse side of each of the three invoices contains the following language:

Houghton Wood Products, Inc. (Seller) and the Customer hereby agree the contract of sale for all wood and wood products for which this invoice is issued, incorporates the following terms and conditions:

(a)   All wood, wood products and other goods of any kind (Goods) delivered by Seller to Customer shall remain titled to Seller until approval of the Goods by Customer. Customer shall approve of the Goods by making payment in full of all charges invoiced for said Goods. No other method of approval is acceptable. Partial payment shall be deemed as approval for part of the Goods allocated to the partial payment, or on a proportional basis, whichever is applicable.

(b)   Seller's title in the Goods and the sale of Goods on approval are intended to be, and shall constitute a purchase money security interest in the Goods. Seller shall be entitled to possession of the Goods upon default in payment thereof.

(c)   Customer expressly agrees that the Goods are not subject to Customer's creditors until payment in full to Seller at which time title shall transfer to Customer.

(d)   Delivery and shipping terms agreed to by Customer and Seller will not adversely affect Seller's title nor Seller's security interest, irrespective of which party assumes the risk of loss during transit.

(e)   The above terms and conditions shall supersede and be controlling over any term or condition contained in any other instrument delivered between Customer and Seller which conflicts herewith, all other statements and representations having been merged herein.

(f)   The terms and conditions contained in this contract for sale between Seller and Customer shall be

governed by and construed in accordance with the laws of the State of Wisconsin.

■

Upon examination of these invoices, we conclude that the agreement between Houghton and Badger did not create a sale on approval. We reach this conclusion because when the agreement is examined objectively, there are a number of terms that are inconsistent with a sale on approval.

First, paragraph (b) on the reverse side of the invoice provides that "Seller's title in the Goods and the sale of Goods on approval are intended to be . . . a purchase money security interest in the Goods." The possession of a security interest by one who retains title in the same goods is an anomaly. *See* 3A ANDERSON *supra*, § 2-326:13, at 418 (sale on approval is not a secured transaction because there is no intent to create a security interest). If title had not transferred to Badger, there would be no need to retain a security interest because the seller would continue to own the goods and have rights in the goods superior to any creditors. Thus, this provision is inconsistent with Houghton retaining title in the goods as in a sale on approval.

Another provision states that if there is a dispute about the delivered lumber, the dispute will be arbitrated through use of a National Hardware Lumber Association inspector and the NHLA Sales Code. This provision is inconsistent with a sale on approval because the purchaser in a sale on approval has the right to return the goods even though they conform to the contract. Section 402.326(1), STATS. The requirement that the buyer arbitrate a dispute as to the grade of lumber is inconsistent with a sale on approval because the buyer "on approval" can simply return

products that it finds to be of unsatisfactory quality. In this agreement the buyer is provided no option besides dispute resolution. By compelling the purchaser to arbitrate any dispute rather than to return goods with which it is not satisfied, the invoice imposes terms and conditions in conflict with a sale on approval.

The invoice is also inconsistent with a sale on approval because it provides an assessment of interest for delayed payment. A purchaser in a sale on approval does not purchase the goods until it accepts them. The invoice in this case specifically limited acceptance to payment of the purchase price. Therefore, until the purchase price was paid, Houghton retained title and Badger owed nothing. The fact that the invoice provides for the payment of interest for delayed payment suggests the sale was not on approval.

An additional provision inconsistent with a sale on approval can be found in a document titled "Acknowledgement of Order" that was sent to Badger in May 1993. This provision states: "All complaints must be made to us in writing within ten days after receipt of material." This provision is inconsistent with a sale on approval where a purchaser reserves the absolute right to return the goods to a seller. To restrict the nature and timing of a complaint is to suggest that title has passed to the purchaser and that the purchaser has ten days to complain about goods it has already purchased.

The second part of our objective examination requires us to look at the parties' course of conduct. In this case, there is little conduct that sheds light on the nature of the transaction. However, two specific facts suggest the transaction, viewed objectively, was not a sale on approval. First, Badger in its records identified the contract price for two of the three invoices as an

account payable. Second, Badger surrendered all of the wood to Associated Bank, rather than asserting it belonged to Houghton. These acts, viewed by a reasonable creditor, suggest the sale was not on approval.

While we have noted a variety of invoice provisions and party actions inconsistent with a sale on approval, we recognize that paragraph (a) of the invoice specifically uses the word "approval" when it states that all goods delivered by the seller to the customer "shall remain titled to Seller until approval of the Goods by Customer." This suggests the parties may have intended that the sale be on approval. Additionally, Houghton has advanced explanations of the intent behind other inconsistent provisions. While these explanations would be helpful if we were examining the intent of the parties, they are not determinative here because the appropriate analysis examines the documents and course of conduct objectively, not subjectively. Because several invoice provisions, as well as the parties' course of conduct, viewed objectively, are inconsistent with and antagonistic to a sale on approval, we conclude the transaction was not a sale on approval.

Our determination that the transaction did not constitute a sale on approval is reinforced by the definition of sale on approval found in § 402.326(1), STATS. Under § 402.326(1)(a), the sale is on approval if the goods are delivered *primarily for use*. The U.C.C. does not define "use." In this case, Associated Bank would have us interpret "use" to apply only to goods that are consumed by the purchaser for its own purposes. For example, the floor wax used to polish the purchaser's floor would be for use while floor wax intended for resale would not be "use" as that term is used in

470

§ 402.326(1)(a). While we do not believe such a narrow construction of this statute is justified because the statute itself does not limit the word "use" to personal use, we conclude that the wood in this case was not for Badger's use.

We base our decision in part on the U.C.C. comment that explains the situation contemplated by a sale on approval transaction:

> The type of "sale on approval," "on trial" or "on satisfaction" dealt with involves a contract under which the seller undertakes a particular business risk to satisfy his prospective buyer with the appearance or performance of the goods in question. The goods are delivered to the proposed purchaser but they remain the property of the seller until the buyer accepts them. The price has already been agreed. The buyer's willingness to receive and test the goods is the consideration for the seller's engagement to deliver and sell.

WISCONSIN STAT. ANN. § 402.326 cmt. 1 (West 1963).

In this case, the wood delivered to Badger was to be made into cabinets that Badger would then sell to customers. Once the wood is made into cabinets, it undergoes substantial transformation and cannot be returned, as Houghton conceded at oral argument. Yet, if the sale was on approval, title in the transformed wood would remain with Houghton until payment is made without regard to the transformation. It violates common sense and the rules of commerce to permit transformed goods to remain titled to the seller. We conclude that when a good is used in the manufacturing process where it undergoes transformation and is subsequently resold, it is not delivered for "use" as that

term is used in the code. Because this transaction cannot be a delivery for "use" contemplated by § 402.326(1), STATS., it was not a sale on approval.

Our conclusion is consistent with other jurisdictions that have determined whether goods were delivered on approval, on sale or return, or for sale under U.C.C. Sales § 2-326 (§ 402.326, STATS.). In *Medalist Forming Systems v. Malvern Nat'l Bank*, 832 S.W.2d 228, 230-31 (Ark. 1992), the Supreme Court of Arkansas held that where one company delivered raw materials to another company and the materials were processed and sold to customers, the materials had been delivered "for sale" and were therefore subject to § 2-236(3). In Houghton's case, the wood was delivered to be processed into cabinets and sold by Badger. Applying the *Medalist* analysis, this wood was delivered for sale, not for use. Thus, the sale was not on approval. *See also In Re Pearson Indus., Inc.*, 142 B.R. 831, 841 (Bankr. C.D. Ill. 1992) (where one company delivered truck chassis to second company to be modified and resold, the arrangement was a sale or return under § 2-326(2)).

Because the transaction was not a sale on approval and Houghton has not alleged it has superior rights in the wood for any other reason, we reverse the judgment and remand to the circuit court with directions to enter judgment in Associated Bank's favor.[3]

---

[3] Because Houghton has conceded that it has rights in the wood only if the sale was on approval, we need not address whether the transaction would be properly governed by other provisions of § 402.326 or ch. 402, STATS., because the result is the same: Associated Bank has superior rights in the wood.

*By the Court.*—Judgment reversed and cause remanded with directions.